**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHERINE BROOKS, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br>v.<br><br>CURALEAF, INC., *a Delaware Corporation*,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT of 1991, 47 U.S.C § 227** |

## NATURE OF THIS ACTION

1. Plaintiff Katherine Brooks ("Brooks" or "Plaintiff"), individually and on behalf of the proposed class defined below, brings this class action lawsuit against Defendant Curaleaf, Inc. ("Curaleaf" or "Defendant") to enforce the consumer privacy provisions afforded by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), a federal law designed to curtail abusive telemarketing practices precisely like those described herein.

2. As detailed below, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system ("ATDS") to bombard consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

3. Plaintiff alleges as follows upon personal knowledge as to herself and her own experiences and, as to all other matters, upon information and belief including due investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Katherine Brooks is an individual who, at all relevant times, resided in New Windsor, New York.

2. Defendant Curaleaf, Inc. is a Delaware corporation with its headquarters and principal place of business at 301 Edgewater Place, Suite 405, Wakefield, MA 01880.

3. Curaleaf advertises itself as a leading medical and wellness cannabis operater in the United States.

4. According to its website, Curaleaf has a presence in at least 23 states and owns and operates 88 dispensaries, 22 cultivation sites, and 30 processing sites with a focus on highly populated, limited license states, including New York.[1]

5. Curaleaf is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

## JURISDICTION AND VENUE

6. Plaintiff Brooks, a New York resident, received text messages sent by Defendant that form the basis of her claims within this District.

7. This Court has personal jurisdiction over Defendant because it engaged in a nationwide telemarketing campaign, including in this District.

8. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial portion of the events alleged herein occurred within this District.

9. Moreover, this Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

---

[1] *See* https://ir.curaleaf.com/ (last visited August 10, 2020).

11. The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiff.

12. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11.

13. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12;

14. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. at §§ 12-13.

15. The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

16. Text messages are considered calls subject to regulation under the TCPA.

17. 47 C.F.R. § 64.1200(a)(2) additionally states that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

18. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

19. Generally, the TCPA prohibits the use of ATDSs to produce unwanted phone calls or text messages.

20. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation.

21. Moreover, Federal Courts have federal question jurisdiction to resolve TCPA claims. *See, e.g.*, *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) (reversing Circuit Court and holding TCPA's grant of jurisdiction to state courts does not displace federal question jurisdiction over TCPA claims).

**FACTUAL ALLEGATIONS**

22. Plaintiff Katherine Brooks is the regular and sole user of her cellular telephone number (845) 549-XXXX, and has been at all times relevant to this action.

23. On or about June 12, 2020, Defendant sent an automated unsolicited marketing text message to Plaintiff Brooks' cellular telephone number from the telephone number (206) 775-7325.

24. Then, on June 14, 2020, Defendant sent a second automated unsolicited marketing text message to Plaintiff Brooks' cellular telephone number from the telephone number (206) 775-7325.



25. The link embedded in the text message (https://q0bi.com/KMO77J) redirects recipients to Defendant's website https://website.curaleaftest.com/locations/#new-york.

26. Defendant sells and promotes its products at this website.

27. Plaintiff did not respond to Defendant's initial text messages.

28. Nonetheless, Defendant sent two additional text messages to Plaintiff Brooks' cellular telephone number on July 18, 2020 and July 19, 2020 from a different telephone number: (213) 414-7549.

29. Defendant also sent Plaintiff Brooks a text message on July 22, 2020 from a third telephone number: (205) 843-1210.




30. The links embedded in these text messages are https://curaleaf.com/locations/#new-york; https://hqui.us/gG02oEgM2vX3; and https://ccop.us/gG02a892Z9z4.

31. Each of these links redirect to Defendant's website (https://website.curaleaftest.com/locations/#new-york)

32. Defendant sells and promotes its products at this website.

33. Plaintiff did not give Defendant prior express written consent to send text messages to her cellular telephone numbers by using an automatic telephone dialing system.

34. The text messages Defendant sent to Plaintiff consisted of pre-written templates of impersonal text and were identical to text messages Defendant sent to other consumers.

35. Upon information and good faith belief, the language in the messages was automatically generated and inputted into pre-written text templates without individualized human intervention in the drafting or sending of the messages.

36. Upon information and belief, Defendant sent identical text messages to thousands of other consumers.

37. The telephone system Defendant used to send the message constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

38. The text messages at issue are standardized, impersonal, and consistent in structure and format.

39. Upon information and belief, Defendant sent these advertisement and marketing text messages at issue using equipment which has the capacity to store numbers to be called or to produce numbers to be called and to dial such numbers automatically.

40. Upon information and belief, no human directed any single text message to Plaintiff's cellular telephone number.

41. Upon information and belief the hardware and software combination utilized by Defendant has the capacity to store and dial sequentially generated numbers, randomly generated numbers, or numbers from a database of numbers.

42. Defendant did not have Plaintiff's prior express consent to place automated text messages to Plaintiff on her cellular telephones.

43. Receipt of Defendant's unauthorized messages drained Plaintiff's phone batteries and caused Plaintiff additional electricity expenses and wear and tear on her phone and battery.

44. Defendant did not place the text message for an emergency purpose.

45. Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

## STANDING

46. Defendant's unsolicited text messages, by their nature, were a nuisance to Brooks.

47. Defendants unsolicited text messages, by their nature, invaded Brooks' privacy and disturbed her.

48. Defendants unsolicited text messages, by their naure, took valuable time from Brooks, distracting and annoying her.

49. Brooks suffered concrete, particularized injuries because of Plaintiff's conduct.

50. All of these injuries were suffered by each member of the putative class.

51. Moreover, the text messages at issue were directly and explicitly linked to Defendant.

52. The links embedded in the text messages Plaintiff received (https://q0bi.com/KMO77J); (https://curaleaf.com/locations/#new-york); (https://hqui.us/gG02oEgM2vX3); and https://ccop.us/gG02a892Z9z4) each redirect recipients to Defendant's website (https://website.curaleaftest.com/locations/#new-york), where Defendant sells and promotes products.

53. The text messages are the source of Plaintiff's and the class's injuries.

54. Plaintiff and the putative class' injuries may be redressed by a favorable judicial decision under the TCPA, consistent with the legislative intent underlying TCPA's damages provisions.

55. Therefore, plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as representatives of the following class:

> All persons throughout the United States (1) to whom Defendant delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification.

57. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant have or had a controlling interest.

58. Plaintiff reserves the right to redefine the class and to add subclasses as appropriate based on discovery and specific theories of liability.

**Numerosity**

59. The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery.

60. On information and belief, Defendant texted thousands of class members nationwide during the class period.

61. Accordingly, it is reasonable to infer members of the class are so numerous that joinder of all members is impracticable.

62. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

**Ascertainability**

63. The members of the class are ascertainable because the class is defined by reference to objective criteria.

64. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

**Typicality**

65. Plaintiff's claims are typical of the claims of the members of the class.

66. Plaintiff has had to suffer the burden of receiving text messages to her cellular telephone from an ATDS.

67. Thus, her injuries are typical to class members.

68. Defendant used an ATDS to deliver text messages to Plaintiff's cellular telephone number in a similar manner as it did to all members of the class.

69. Plaintiff's claims, and the claims of the members of the class, originate from the

same conduct, practice and procedure on the part of Defendant.

70. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

71. Defendant harmed Plaintiff and class members by illegally texting their cellular phones using an ATDS.

72. Plaintiff and the class were damaged thereby.

**Adequacy**

73. Plaintiff is qualified to and will fairly and adequately protect the interests of the members of the class with whom she is similarly situated.

74. Plaintiff acknowledges that she has an obligation to make known to the Court any relationships, conflicts, or differences with any class member.

75. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

76. Plaintiff will vigorously pursue the claims of the members of the class.

77. Plaintiff has retained counsel experienced and competent in class action litigation.

78. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.

79. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

80. Plaintiff's counsel will vigorously pursue this matter.

81. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

82. Plaintiff has incurred, and throughout the duration of this action, will continue to

incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each class member.

**Predominance**

83. The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class.

84. The elements of the legal claims brought by Plaintiff and class members are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Commonality**

85. There are common questions of law and fact as to all members of the class, including but not limited to:

   a. Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

   b. Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to send text messages to class members;

   c. Whether Defendant's conduct violated the TCPA;

   d. Whether Defendant should be enjoined from engaging in such conduct in the future; and

   e. The availability of statutory penalties.

**Superiority:**

86. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

87. If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

88. The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

89. The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

90. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

91. The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

92. Absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

93. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

94. There will be little difficulty in the management of this action as a class action.

95. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

96. Plaintiff and the class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

97. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of class members and does not seek recovery for personal injury and related claims.

# COUNT I

### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b)(1)(A)(iii)
### (On behalf of Plaintiff and the TCPA Class)

98. Plaintiff incorporates all preceding factual allegations as if fully restated herein.

99. Defendant and/or its agents sent unsolicited text messages to Plaintiff's cellular telephone and the cellular telephones of the other members of the class using an ATDS.

100. Defendant sent these text messages *en masse* without the consent of Plaintiff and the other members of the class.

101. Defendant's conduct was negligent, or willful or knowing.

102. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1).

103. As a result of Defendant's conduct, Plaintiff and the other members of the class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

104. Plaintiff and members of the putative class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by sending texts, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

105. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing texts to Plaintiff's cellular telephone numbers without prior express written consent.

106. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Katherine Brooks prays for relief and judgment, as follows:

a) Determining that this action is a proper class action and certifying the class;

b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing their violative behavior, including continuing to deliver text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the class, without prior express written consent;

f) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B) in the amount of $500.00 per unlawful text message to Plaintiff, and each class member;

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3)(C);

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated:  August 11, 2020                                   Respectfully submitted,

/*s*/ Siddartha Rao
Siddartha Rao, Esq.
Romano Law, PLLC
55 Broad St 18th floor,
New York, NY 10004
Telephone: (212) 865-9848
Sid@romanolaw.com
*Local Counsel to Plaintiff, on behalf of herself and all others similarly situated*

/s/ Abbas Kazerounian
Abbas Kazerounian, Esq.
Kazerouni Law Group, APC.
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: 800.400.6808
Facsimile: 800.520.5523
ak@kazlg.com
*Attorneys for Plaintiff, on behalf of herself and all others similarly situated*